**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 23, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BENJAMIN ARCHULETA,

Defendant - Appellant.

No. 06-4199

(D. Utah)

(D.C. No. 2:05-CR-676-TC)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Circuit Judge, **PORFILIO** and **ANDERSON**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendant and appellant Benjamin Archuleta appeals an order determining that the involuntary administration of antipsychotic medication is necessary to render him competent to stand trial. We affirm.

## BACKGROUND

In September 1998, Archuleta was charged with threatening the life of a federal district court judge in Utah. He was sent to a facility in Springfield, Missouri, for a competency evaluation. After undergoing treatment, Archuleta was found competent to stand trial while on medication. Thereafter, the government and Archuleta entered into a stipulation that led to a finding of not guilty by reason of insanity. Archuleta was accordingly committed to a hospital.

Archuleta was subsequently released from the hospital with specific conditions of release, pursuant to 18 U.S.C. § 4246. After Archuleta violated the conditions of release, the district court imposed stricter conditions and released Archuleta to a halfway house. When Archuleta again violated his conditions of release, the court revoked his release and remanded him to the custody of the Bureau of Prisons for continued hospitalization at the Springfield facility.

In June 2004, the court again ordered Archuleta released on certain conditions. In February 2005, the court terminated supervision of Archuleta and considered the case closed. Within seven months of the termination of his supervised release, the United States Marshal Service and the Bureau of Alcohol,

Tobacco and Firearms ("BATF") learned that Archuleta had attempted to purchase a firearm from a local pawn shop in Salt Lake City, Utah. In doing so, Archuleta had lied about his prior mental health commitment on a form used as a background check. Pursuant to 18 U.S.C. § 922(g)(4), Archuleta is a restricted person who is not permitted to possess or attempt to possess a firearm.

The government charged him with providing false information in the acquisition of a firearm. When Archuleta made his initial appearance on the new firearms charge, the court ordered him to undergo a psychiatric evaluation to determine his competency to stand trial and his mental state at the time of the offense. The court-appointed forensic psychiatrist concluded that Archuleta was not competent to stand trial, but was unable to determine his mental state at the time of the offense.

A magistrate judge held a competency hearing in March 2006 and determined that Archuleta was not competent to stand trial and ordered that he be remanded to the custody of the Bureau of Prisons for restoration of competency. The magistrate judge also ordered an evaluation of Archuleta's mental health status at the time of the offense and an assessment of whether Archuleta was a danger to himself or others. Later that same day, the district court ordered a specific psychiatric evaluation of whether Archuleta should be involuntarily medicated during the court-ordered competency restoration commitment.

Dr. Jeffrey Watabe conducted the evaluation on involuntary medication and prepared a report. In preparing his report, Dr. Watabe relied upon a number of items, including an interview with Archuleta, records and/or reports from the Davis County jail, the BATF and the Springfield facility, a forensic evaluation prepared by Jasmine A. Tehrani, Ph.D, a risk assessment review report prepared by Eduardo Ulloa, M.D., a mental health evaluation prepared by Kathy Reimherr, L.C.S.W., and forensic reports prepared by Lea Ann Preston, Ph.D and Robert L. Denney, Psy.D., A.B.P.P. Dr. Watabe evaluated the possibility of involuntary medication under the four-part analysis of Sell v. United States, 539 U.S. 166 (2003).

That four-part analysis involves the following inquiry: (1) "a court must find that *important* governmental interests are at stake"; (2) "the court must conclude that involuntary medication will *significantly further* . . . state interests . . . [in that the] administration of the drugs is substantially likely to render the defendant competent to stand trial . . . [and that] administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense"; (3) "the court must conclude that involuntary medication is *necessary* to further those interests . . . [in that] any alternative, less intrusive treatments are unlikely to achieve substantially the same results"; and (4) "the court must conclude that administration of the drugs is *medically appropriate*, *i.e.*, in the patient's best

-4-

medical interest in light of his medical condition." Sell, 539 U.S. at 180-81; see also United States v. Morrison, 415 F.3d 1180, 1181 (10th Cir. 2005) (discussing the Sell factors).

Dr. Watabe diagnosed Archuleta as having "Schizophrenia, paranoid type." Report at 11, R. Vol. III. The schizophrenia diagnosis was "based on Mr. Archuleta's difficulty with delusions and hallucinations that have caused him significant interpersonal, occupational, and legal difficulties" which have "persisted for a number of years and do not appear to be related to mood disorders, medical conditions, or drug abuse." Id. The "paranoid type" qualifier was "based on the prominence of Mr. Archuleta's delusions and absence of significant disorganized or catatonic behaviors." Id.

Applying the four Sell factors, Dr. Watabe concluded that Archuleta should undergo involuntary medication to restore his competency to stand trial. On the first factor, whether important governmental interests are at stake, Dr. Watabe stated that he was unable to "address with reasonable medical certainty whether important governmental interests were at stake . . . because this topic lies outside the area of [his] expertise." Id. at 11-12. The doctor did, however, state "with reasonable medical certainty" that Archuleta "does not meet the criteria for civil commitment to an institution for the mentally ill" because he "does not currently pose a substantial danger of physical injury to himself . . . or others." Id. at 12.

-5-

With regard to the second factor, whether administration of drugs will restore Archuleta to competency to stand trial and whether such drugs are substantially likely to have side effects, Dr. Watabe concluded "with a reasonable medical certainty that administration of antipsychotic medication is substantially likely to render Mr. Archuleta competent to stand trial." Id.  The basis for that conclusion was:  (1) Archuleta's past experience with antipsychotic medication reveals that he was previously restored to competency on two occasions, once in 1998 and again in 1999; (2) he has a "well-documented history of resolution of his psychotic symptoms as a result of treatment with antipsychotic medications" such as Prolixin in 1998 and Risperdal in 2003; and (3) there is "no indication of any cognitive deficit that would prevent restoration to competence once Mr. Archuleta's psychotic symptoms are treated." Id. at 12-13.

Dr. Watabe also concluded "with reasonable medical certainty that treatment with antipsychotic medications is substantially unlikely to have side effects that will interfere significantly with Mr. Archuleta's ability to assist counsel in conducting a trial defense." Id. at 13.  This conclusion was based upon the fact that Archuleta has "no history of side effects from the antipsychotic medications (Prolixin, Risperdal) previously used to treat his psychosis," the fact that his medical records document his willingness to take medications and that he has never required large doses of medication to adequately treat his psychosis and restore him to competency. Id.

With respect to the third factor, whether adequate alternative treatments exist, Dr. Watabe opined "with reasonable medical certainty that involuntary medication is necessary to restore Mr. Archuleta to competency" because (1) "[t]here are no alternative, less intrusive treatments likely to achieve substantially the same results as antipsychotic medications"; and (2) there is no less intrusive means for administering drugs given that Archuleta "insists he has no mental illness" and that "he will refuse all antipsychotic medications, even in the face of contempt of court." Id. at 14.

Regarding the fourth factor, whether the administration of antipsychotic drugs is medically appropriate, Dr. Watabe opined "with reasonable medical certainty" that Archuleta should be treated with antipsychotic medications because it is the treatment of choice for schizophrenia and that "all other treatment interventions such as psychotherapy are minimally effective." Id. He further concluded that, while such treatment might exacerbate Archuleta's diabetes, that side effect could likely be medically controlled.

In June 2006, the court noted that the involuntary medication evaluation had been completed and scheduled a hearing on the question of whether to order such involuntary medication. The hearing took place in August 2006. The court admitted as evidence a letter from Archuleta, Dr. Watabe's report, and the forensic evaluation by Jasmine Tehrani. Additionally, Dr. Watabe testified at the hearing.

In addition to confirming his findings and conclusions contained in his report, Dr. Watabe testified about the four-part analysis required by Sell. He testified that he did not believe that the criteria for civil commitment applied to Archuleta because he was "relatively stable in terms of dangerousness" to himself or others. Tr. of Hr'g at 19-20, R. Vol. II. The doctor concluded, however, that, although he did not evaluate Archuleta's long-term risk of violence, given Archuleta's history of assaults, drug and alcohol abuse, paranoia regarding the government, threats to government officials, and his conduct in attempting to purchase a weapon, he believed Archuleta's long-term risk of assaultive conduct was "moderate to high." Id. at 21. Regarding the likelihood that antipsychotic medication would render Archuleta competent to stand trial, Dr. Watabe estimated that with medication Archuleta's "psychotic symptoms would begin resolving within a few weeks, and probably within three to six months." Id. at 23.

Dr. Watabe also testified about improvements in medications, such that the newer ones had fewer side effects. Further, he noted that Archuleta had taken various medications with no side effects and that, in fact, Archuleta had made "an explicit denial of side effects." Id. at 25. As to alternative treatments, Dr. Watabe testified there were no other means to restore competency, and, as to the medical appropriateness of medication, the doctor stated that "antipsychotic medication is the standard of care for psychosis, and in Mr. Archuleta's case, schizophrenia, it is the only effective treatment for it." Id. at 28.

The district court thereafter made its findings of fact and conclusions of law. It found "by a preponderance of the evidence that [Archuleta] is incompetent to stand trial consistent with the reasons and analysis set forth in Dr. Tehrani's report." Order at 4, R. Vol. I. The court then turned to an analysis of whether involuntary medication to restore Archuleta's competency was required. Following our instructions in Morrison, the district court first considered whether involuntary medication could be justified under the analysis of Washington v. Harper, 494 U.S. 210 (1990). In Harper, the "Court . . . held that it is permissible to administer antipsychotic drugs involuntarily to a prison inmate with a serious mental illness 'if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest.'" Morrison, 415 F.3d at 1182 (quoting Harper, 494 U.S. at 227). The court relied upon Dr. Watabe's report and testimony to agree with the government that Archuleta "does not presently pose a substantial risk of harm to himself or others, nor is his health gravely at risk without medication." Order at 4, R. Vol. I.

The court then considered whether involuntary medication was justified under Sell. Applying the four Sell factors, the district court found "by clear and convincing evidence" that involuntary medication should be ordered while Archuleta was hospitalized for competency restoration. Id. With regard to the first factor, the court concluded there were "important governmental interests . . . in bringing [Archuleta] to trial," id. at 5, and that "'[t]he Government's interest in

-9-

bringing to trial an individual accused of a serious crime is important' because 'the Government seeks to protect through application of the criminal law the basic human need for security.'" Id. (quoting Sell, 539 U.S. at 180-81).

As part of this factor, the Court in Sell noted that courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest." Sell, 539 U.S. at 180. One such special circumstance is "the possibility that the defendant has already been confined for a significant amount of time." Id.; see also United States v. Bradley, 417 F.3d 1107, 1116 (10th Cir. 2005) ("[W]hen the amount of time the defendant is confined pending determination of competency is in parity with the expected sentence in the criminal proceeding, the Government may no longer be able to claim an important interest in the prosecution."). In this case, the district court noted that the statute Archuleta allegedly violated, 18 U.S.C. § 924(a)(6), carried a ten-year maximum sentence. Further, even though the sentencing range under the United States Sentencing Commission, Guidelines Manual ("USSG") was probably from six to twelve months or, at worst, from twelve to sixteen months, the court compared Archuleta's time spent already in custody to the ten-year statutory maximum. Thus, although Archuleta had spent

approximately a year in custody, the court determined that that time was not in parity with the expected sentence.[1]

Turning to the second and third Sell factors, the district court concluded that involuntary medication of Archuleta would result in the restoration of his competency without side effects that would interfere with his ability to assist trial counsel in his defense. The court also concluded that no other less intrusive means would achieve substantially the same results. Finally, applying the fourth Sell factor, the court concluded that administration of antipsychotic medication was medically appropriate and in the best interest of Archuleta.

Archuleta appeals, arguing the court erred in its determination that involuntary medication was warranted. He argues that the government's interest in prosecuting him is lessened by the negative effects he will suffer because of long-term forced medication and because he has already served time comparable to what he would be sentenced to serve under the Guidelines.

---

[1]Even if the proper comparison was between the expected sentence under the Guidelines and time spent in custody, the district court noted that "a reasonable sentence would be in excess of predicted sentencing guidelines that may apply to the defendant." Order at 5, R. Vol. I.

**DISCUSSION**

Because the Supreme Court in Sell specified "neither a standard of proof

for the Sell factors nor a standard of appellate review, Bradley, 417 F.3d at 1113,

we have stated the applicable standards as follows:

> 'Whether the Government's asserted interest is important is a legal
> question.' . . . We would expand the parameters of the legal question
> to include whether involuntary administration of antipsychotic drugs
> 'is necessary significantly to further important governmental trial-
> related interests. In other words, '[h]as the Government, in light of
> the efficacy, the side effects, the possible alternatives, and the
> medical appropriateness of a particular course of antipsychotic
> treatment, shown a need for that treatment sufficiently important to
> overcome the individual's protected interest in refusing it?' . . .
> [T]he remaining Sell factors depend upon factual findings and ought
> to be proved by the government by clear and convincing
> evidence. . . . We review conclusions of law *de novo* and findings of
> fact for clear error.

Id. at 1113-14 (quoting United States v. Gomes, 387 F.3d 157, 160 (2d Cir. 2004),

and Sell, 539 U.S. at 179, 183); see also United States v. Evans, 404 F.3d 227,

236 (4th Cir. 2005).

We have carefully reviewed the district court's opinion, and we conclude

that its analysis of the four Sell factors is thorough and correct. Its legal

conclusion that the governmental interest in prosecuting Archuleta is strong and

undiminished by any special circumstance is correct. While Archuleta argues that

we should consider a potential Guideline sentence when comparing time already

spent in custody with Archuleta's likely sentence, we agree with the district court

that the appropriate comparison is to the statutory maximum, ten years in this

-12-

case.  See Bradley, 417 F.3d at 1117.  The court's factual findings relating to the other Sell factors are not clearly erroneous.  We thus agree that forcible medication to restore Archuleta's competency is appropriate.

## CONCLUSION

For the foregoing reasons, the district court's order is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge